Filed 4/21/25  P. v. Brasuell CA2/6
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESS DRUE BRASUELL III,<br><br>    Defendant and Appellant. | 2d Crim. No. B308124<br>(Super. Ct. No. 18F-04077)<br>(San Luis Obispo County)<br><br>OPINION ON TRANSFER<br>FROM SUPREME COURT |

Jess Drue Brasuell III appeals a judgment following conviction of encouraging a minor to use a controlled substance (four counts); oral copulation of a minor (three counts); contacting a minor for a sex offense; contacting a minor for a lewd purpose (three counts); possession of child pornography; rape by use of drugs; forcible oral copulation (two counts); assault with intent to commit a sex offense; commission of a lewd act on a child; unlawful sexual intercourse with a minor (two counts); sexual penetration with a foreign object; misdemeanor battery; and using a minor for sex acts. (Health & Saf. Code, § 11380, subd. (a); Pen. Code, §§ 288a, subd.

1

(b)(1), 288.3, subd. (a), 288.4, subd. (b), 311.11, subd. (a), 261, subd. (a)(3), 288a, subd. (c)(2)(A), 220, subd. (a)(2), 288, subd. (c)(1), 261.5, subd. (c), 289, subd. (h), 242, 311.14, subd. (c).)[1]

This appeal concerns 21 charged sex and drug offenses, among others, that Brasuell committed against four minor teenage girls who were friends or classmates of his son.  Brasuell represented himself at trial until the trial court terminated his self-representation for his disruptive behavior and failure to observe evidentiary rulings.  On appeal, Brasuell raised issues of the court's refusal to appoint advisory counsel, instructional errors, lack of sufficient evidence to support conviction of rape by drug intoxication (count 7), and application of newly amended sentencing statutes to his sentence.  In an unpublished opinion filed on September 26, 2022, we rejected these contentions and affirmed.

Our Supreme Court then granted review of that decision and, on January 15, 2025, transferred the matter to this court with directions to vacate our decision and reconsider the matter in light of *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*) and *People v. Salazar* (2023) 15 Cal.5th 416 (*Salazar*).  We have reconsidered the matter after receiving supplemental briefs from the parties.  We conclude beyond a reasonable doubt that a jury would have found beyond a reasonable doubt all the aggravating factors upon which the trial court relied to impose the upper term sentences in this case.  (*Lynch,* at pp. 742-743.)  We also conclude that the court would have imposed the same sentence had it been aware of its discretion to stay different counts pursuant to section 654.  Accordingly, we affirm.

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

## FACTUAL AND PROCEDURAL HISTORY
### Crimes Against L.D.[2]
### (Counts 1-4)

L.D. attended high school with Brasuell's son and spent time with him smoking marijuana at the Brasuell home. Between August 2014 and January 2015, L.D. was at the Brasuell home three to five nights a week. When she was 16 or 17 years old, Brasuell provided L.D. with drugs – Adderall, Ritalin, methamphetamine, marijuana concentrate, Xanax, and alcohol. L.D. became addicted to methamphetamine, which Brasuell furnished her "to teach [her] a lesson."

Brasuell made sexual advances to L.D. and began to pressure her for sexual acts. L.D. testified that she allowed Brasuell to orally copulate her in exchange for money to pay a drug dealer. On a second occasion, L.D. masturbated Brasuell in exchange for money to pay a drug dealer.

In February 2015, L.D. left the Brasuell home and eventually moved back home with her parents. Brasuell sent L.D. messages through Facebook, but she blocked him from her account.

### Crimes Against C.D.
### (Counts 5-8)

C.D. dated Brasuell's son for several years and met Brasuell when she was 17 years old. Brasuell provided her with Adderall, Xanax, Valium, and Oxycontin. C.D. admitted that she was addicted to drugs and consumed them daily.

C.D. and Brasuell had a "sex-for-drugs" arrangement. On August 3, 2015, Brasuell pinned her down and forcibly copulated her. C.D. physically resisted and told him "no." On several occasions, Brasuell took photographs of C.D. when she was nude.

---

[2] We refer to the victims by initials; the D initial represents the name "Doe."

On another occasion, when C.D. was drunk, Brasuell engaged in sexual activity with her and promised her money, cigarettes, and drugs. C.D. was unable to walk or hold herself up and could not recall much of the encounter because she lost consciousness. Brasuell recorded the encounter which included oral copulation and intercourse.

C.D. believed that submitting to Brasuell's sexual demands was her only option to receive drugs. She was also frightened of Brasuell because she had seen him act violently toward his son and he weighed twice as much as her.

After C.D. turned 18 years old, she stopped visiting the Brasuell home. C.D. later had a psychotic break, was diagnosed with schizophrenia, and stayed 18 months in a psychiatric hospital. She also spent time in juvenile hall where she informed law enforcement that Brasuell gave her drugs and engaged in sexual activity with her. By 2017, C.D. stopped taking drugs. Her mother credited a conservatorship over C.D. with helping C.D. break away from Brasuell.

*Crimes Against T.D.*
*(Counts 9-11)*

T.D. was a friend of Brasuell's son. When she was 12 years old, she suffered a traumatic brain injury and now experiences anxiety and depression. T.D. visited the Brasuell home daily when she was 15 years old. There she drank alcohol, smoked cigarettes, used prescription drugs, and became a drug addict. T.D. testified that she "would mix [the drugs] together and do all of them at once." During one incident, T.D. mixed 10 pills plus alcohol; she awoke on the sofa wearing lingerie. Brasuell videotaped T.D. wearing the lingerie and this videotape, plus two others, were played at trial. T.D. became addicted to Adderall and Valium, drugs Brasuell referred to as "goodies."

4

In February 2016, Brasuell pushed T.D. onto his bed, reached under her shirt, and grabbed her breasts. She pushed him away and ran from the room. On February 24, 2016, T.D. reported this incident to law enforcement.

*Crimes Against A.D.*
*(Counts 12-21)*

A.D. met Brasuell when she was 14 years old after attending a party at his home. Brasuell's son gave her Valium and alcohol during the party. She lost consciousness and awoke in bed. Brasuell soon became "the sole provider" of drugs to A.D. and she became a drug addict.

On two occasions, Brasuell gave A.D. oxycodone in exchange for oral copulation. A.D. had informed Brasuell of her age. A.D. soon became intoxicated after consuming oxycodone and alcohol. Brasuell provided A.D. with other drugs in exchange for sexual acts. A.D. testified that she "never hung out with [Brasuell] unless [she] was getting drugs."

A.D. testified that she had sexual intercourse with Brasuell 10 to 20 times while she was conscious, and one time when she was unconscious. She also orally copulated him 10 to 25 times. Brasuell digitally penetrated A.D. on three separate occasions and also took inappropriate photographs of her on four or five separate occasions. Brasuell sometimes demanded sexual activity prior to giving A.D. drugs.

In August 2017, A.D. was living a sober lifestyle. She had one last sexual encounter involving oral copulation with Brasuell in exchange for drugs. On November 2, 2017, A.D. participated in a pretext call to Brasuell. She informed him that she had a sexually transmitted disease and that he had been her sex partner. Brasuell responded, "Yeah, okay." Approximately one month later, Brasuell sought testing for a sexually transmitted disease.

5

*Uncharged Crimes Against K.B.*
*Evidence Code Sections 1101 & 1108*

K.B. met Brasuell when she dated Brasuell's son. The son provided K.B. with drugs daily. Brasuell kept the drugs in his bedroom and soon he directly provided K.B. drugs. K.B., a foster care child, then began living in the Brasuell house. Brasuell would offer drugs to K.B. in exchange for information regarding L.D. of whom he was enamored.

When K.B. was 16 years old, Brasuell bought her lingerie. He asked her to engage in sexual activity with L.D. but K.B. refused. Brasuell gave K.B. and L.D. methamphetamine to smoke. The following day K.B. left the Brasuell house but returned to retrieve her belongings. She later filed a complaint with the local police because she was concerned for L.D.'s health and safety.

*Uncharged Crimes Against A.B.*
*Evidence Code Sections 1101 & 1108*

A.B. met Brasuell through his son. During her freshman year in high school, Brasuell gave her Xanax, Percocet, Tramadol, oxycodone, methamphetamine, and Adderall. A.B. was already addicted to heroin.

Brasuell began touching A.B. over her clothing when she was 14 years old. When she was 17 or 18 years old, they began to exchange sex acts for drugs. Brasuell later arranged for A.B. to become his in-home caregiver through the state in-home support services agency.

A.B. introduced A.D. to Brasuell and explained that Brasuell exchanged pills for sex acts. When A.D. was 16 years old, Brasuell engaged in sexual activity with her while she was unconscious. She informed A.B. and Brasuell admitted this to A.B. On occasion, A.D. and A.B. would take turns engaging in sexual activity with Brasuell.

The prosecution gave A.B. immunity from prosecution for her testimony at trial.

*Uncharged Conduct Against Stepdaughter*

Brasuell's former wife, Anna, claimed that Brasuell molested her daughter many years earlier, when the daughter was five or six years old. Anna related this information to L.D. and C.D.'s mother. Anna did not testify at trial and this evidence was elicited by Brasuell during cross-examination of other witnesses.

*Results of Searches*

In a search of Brasuell's residence, police officers recovered 200 prescription pill bottles, many containing controlled substances, methamphetamine pipes, women's lingerie, a gun, and digital files containing photographs of several victims nude or wearing lingerie.

*Defense Testimony*

Brasuell's son testified that his father had many prescriptions for drugs in his own name, his son's name, and that of a long-deceased person. Brasuell's son denied seeing his father engage in sexual activities with the young women. He saw Brasuell provide drugs to some of the women, but not others.

Brasuell testified and denied sexual activity with any of the four Doe victims. He also denied providing controlled substances to them. Brasuell admitted using methamphetamine, however, including with A.B. He also admitted to exchanging drugs for sex with A.B., who then was 18 years old.

*Conviction, Sentencing, & Appeal*

The trial court sentenced Brasuell to an aggregate prison term of 47 years 4 months, including imposition of an upper term for four counts (counts 1, 7, 8, 10). It stayed sentence pursuant to section 654 for counts 3 and 11. The court imposed a $10,000 restitution fine, a $10,000 parole revocation restitution fine, ordered

victim restitution, and awarded Brasuell 1,216 days presentence custody credit.  (§§ 1202.4, subd. (b), 1202.45.)

Brasuell appeals and contends that:  1) the trial court erred by refusing to appoint advisory counsel; 2) the court prejudicially erred by instructing regarding uncharged sex acts; 3) the court prejudicially erred by not instructing on accomplice liability; 4) cumulative error has denied him a fair trial; 5) insufficient evidence supports count 7, rape by drug intoxication; 6) Senate Bill No. 567 requires resentencing; and 7) Assembly Bill No. 518 requires resentencing.

*DISCUSSION*

*I.*

Brasuell argues that the trial court abused its discretion by not appointing advisory counsel during his period of self-representation.  He contends the error violated his Sixth Amendment right to the assistance of counsel.

On July 31, 2018, Brasuell filed a *Faretta* motion to represent himself, noting that he had a college degree and some legal training.  (*Faretta v. California* (1975) 422 U.S. 806.)  The trial court granted the motion.  On December 14, 2018, Brasuell filed a declaration seeking the appointment of advisory counsel, which the court denied.  On April 15, 2019, Brasuell again sought the appointment of advisory counsel but insisted that he would represent himself.  The court refused the request.  Approximately one year later, the court provided notice of a hearing to terminate Brasuell's self-representation for disruptive behavior.  At that hearing, the court decided to appoint standby counsel, but not advisory counsel, for Brasuell.  Brasuell was unequivocal in his request to continue to represent himself.

On July 31, 2020, the trial court granted a mistrial based upon the late discovery of evidence.  Brasuell again requested

8

advisory counsel, but the court denied the request and asked the standby counsel to remain in that capacity.

Although a defendant has the constitutional rights to counsel and self-representation, there is no constitutional right to appointment of standby counsel, advisory counsel, or cocounsel. (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 183; *People v. Blair* (2005) 36 Cal.4th 686, 723, overruled on another point by *People v. Black* (2014) 58 Cal.4th 912, 919.) Thus, "hybrid" forms of representation, whether labeled cocounsel, advisory counsel, or standby counsel, are not constitutionally guaranteed. (*People v. Bloom* (1989) 48 Cal.3d 1194, 1218.)

Advisory counsel is available to assist a defendant representing himself but does not represent the defendant. (*People v. Morelos* (2022) 13 Cal.5th 722, 738.) A defendant seeking appointment of advisory counsel must make a showing of need and the decision to appoint advisory counsel rests with the trial court's discretion. (*Id.* at p. 739.) The factors that the trial court may consider in exercising its discretion include defendant's reasons for the request, defendant's background and education, defendant's demonstrated legal abilities, and the complexity of the trial issues. (*Ibid.*) We review the denial of a request for advisory counsel on a case-by-case basis. (*Ibid.*)

The trial court did not abuse its discretion by refusing to appoint advisory counsel. Brasuell possessed a college degree and some legal training and had filed many motions and pleadings over the course of the proceedings. (*People v. Morelos*, *supra*, 13 Cal.5th 722, 739 [defendant had high school degree, one year of college, used law library daily, and submitted numerous legal filings].) Brasuell also made a successful mistrial motion regarding late discovery documents. The prosecution was not especially complex and involved the credibility of the young women that Brasuell

9

victimized.  Although there may have been questions regarding Brasuell's mental competence in early proceedings, he was not found incompetent to stand trial.  Brasuell has not established that the court abused its discretion by appointing standby counsel and not advisory counsel.

## II.

Brasuell contends that the trial court committed instructional error by instructing with CALCRIM No. 375 ["Evidence of Uncharged Offense to Prove Identity, Intent, Common Plan, etc."], regarding evidence of uncharged sexual misconduct against his minor stepdaughter.  He asserts that he elicited the evidence only to show a motive to falsely accuse him of the charged offenses. Brasuell claims the instruction was prejudicial and violated his federal and state constitutional rights to due process of law.

Brasuell, in propria persona, elicited evidence during cross-examination of L.D. and C.D.'s mother that they had heard rumors that he had molested his six-year-old stepdaughter.  Brasuell then requested the trial court to permit his former wife to testify.  The court denied the request pursuant to Evidence Code section 352. Brasuell then examined his son regarding the rumors.  In the prosecutor's rebuttal case, the prosecutor asked the investigating police detective if he thought Brasuell's former wife had orchestrated a grand conspiracy against Brasuell.  The detective replied no.  This was the prosecutor's only question of any witness regarding the stepdaughter incident.

The CALCRIM No. 375 instruction, given as modified, began: "The People [*sic*] presented evidence that the defendant committed another offense of oral copulation with a minor six years of age, that he provided drugs to other people in exchange for sexual contact, that he provided drugs and/or alcohol to minors who did not testify, that was not charged in this case. . . ."  The pattern instruction then

10

continued to describe the People's burden of proof and how the jury could and could not use the evidence. Further, the jury was cautioned against concluding that the evidence alone was sufficient to prove defendant's guilt in this case.

For several reasons, we reject Brasuell's argument. First, he has forfeited the argument because he did not object to the instruction. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) An exception to forfeiture exists where the substantial rights of the defendant are affected. (§ 1259.) However, the instruction was correct and properly given. It limited the jury's use of the "stepdaughter evidence" and cautioned regarding its improper use. Brasuell's substantial rights were not affected by the correct instruction. Moreover, Brasuell elicited the evidence through his cross-examination and has invited any arguable error. He cannot complain now. (*People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1408.)

*III.*

Brasuell asserts that the trial court erred by not instructing sua sponte concerning accomplice liability, A.B.'s conduct, and counts 12 through 14 and 19 through 21, all counts regarding A.D. Brasuell points out that A.B. received immunity for her testimony, she introduced A.D. to him, and A.B. participated in sexual activity with him and A.D.

Section 1111 provides: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." CALCRIM Nos. 334 and 335 instruct regarding accomplice liability and advise that the testimony or statements of an accomplice that tends to incriminate a defendant should be

11

viewed with caution.  (*People v. Hoyt* (2020) 8 Cal.5th 892, 946.)
The trial court must instruct sua sponte regarding accomplice
testimony if there is sufficient evidence that a witness is an
accomplice.  (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1155.)

We need not decide if sufficient evidence existed to support a
finding that A.B. was an accomplice to Brasuell.  A trial court's
failure to instruct on accomplice liability is harmless if there is
sufficient corroborating evidence in the record.  (*People v. Gonzales
and Soliz* (2011) 52 Cal.4th 254, 303; *People v. Mackey* (2015) 233
Cal.App.4th 32, 125.)  Here overwhelming evidence corroborated
A.B.'s testimony.  The four Doe victims testified regarding
Brasuell's sexual activities with them and his provision of drugs.
Brasuell's son saw his father furnish drugs to several of the victims.
Text messages, photography equipment, and videotapes also
corroborated Brasuell's criminal acts.  Lingerie and 200 prescription
bottles were found in the Brasuell home during execution of a
search warrant.  Any instructional omission was harmless.

*IV.*

Brasuell argues that the cumulative effect of prejudice arising
from the asserted errors compels reversal.  We have either
concluded that there is no error or that any error is harmless.
(*People v. O'Malley* (2016) 62 Cal.4th 944, 1017 [general rule
regarding cumulative error].)

*V.*

Brasuell contends that insufficient evidence supports his
conviction in count 7, rape by the use of drugs.  (§ 261, subd. (a)(3).)
He asserts that there is insufficient evidence that C.D. was so
intoxicated that she did not have the capacity to consent, pointing
out that she sought and obtained money and drugs from the
encounter.

12

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) Our review is the same in a prosecution primarily resting upon circumstantial evidence. (*People v. Rivera* (2019) 7 Cal.5th 306, 331.) We do not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].) We must accept logical inferences that the trier of fact might have drawn from the evidence although we may have concluded otherwise. (*Rivera*, at p. 331.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.)

The crime of rape of an intoxicated person proscribes sexual intercourse with a person who is not capable of giving legal consent due to intoxication. (§ 261, subd. (a)(3); *People v. Sta Ana* (2021) 73 Cal.App.5th 44, 60-61; *People v. Giardino* (2000) 82 Cal.App.4th 454, 462.) Lack of actual consent is not a required element of the crime: "[T]he issue is not whether the victim actually consented to sexual intercourse, but whether he or she was capable of exercising the degree of judgment a person must have in order to give legally cognizable consent." (*Giardino*, at p. 462.) It is not necessary that the victim be so intoxicated that he or she is physically incapable of speaking or otherwise "manifesting a refusal to give actual consent." (*Id.* at p. 464.)

13

Sufficient evidence and reasonable inferences therefrom support the jury's finding that C.D. was incapable of resisting or exercising the judgment necessary to consent to intercourse due to intoxication. C.D. testified that she had been drinking alcohol the evening of the crime, and she informed Brasuell before the sexual encounter that she was intoxicated. C.D. testified that she could not walk, talk, or hold herself upright. Brasuell filmed their encounter, and when C.D. later viewed it, she realized that she "wasn't completely there." C.D. was uncomfortable viewing the videotape and asked Brasuell to delete it (he refused). C.D. also testified that she was "in and out" of consciousness during and after the intercourse with Brasuell. Brasuell's assertion of insufficient evidence to support the conviction of count 7 is without merit.

*Sentencing Arguments*

*VI.*

Brasuell argues that the recent enactment of Senate Bill No. 567 (Stats. 2021, ch. 731, § 1.3) requires a remand for resentencing pursuant to section 1170, subdivision (b), as amended. The Attorney General concedes that the recent amendment applies retroactively to Brasuell, but contends that any error is harmless beyond a reasonable doubt. (*In re Estrada* (1965) 63 Cal.2d 740, 745 [amendments to statutes that reduce punishment for crime apply to all defendants whose judgments are not yet final].)

The trial court imposed upper term sentences for count 1 (nine years - encouraging a minor to use a controlled substance [L.D.]); count 7 (eight years - rape by use of drugs [C.D.]); count 8 (eight years - forcible oral copulation [C.D.]; and count 10 (nine years - assault with intent to commit a sex offense [T.D.]). The court found no factors in mitigation of sentence and numerous factors in aggravation, including the factor of multiple victims who were particularly vulnerable.

14

In imposing the upper terms on the four counts together, the trial court relied upon the following aggravating factors:  1) the crimes involved great violence, bodily harm, and threat of great bodily harm; 2) the multiple victims were particularly vulnerable; 3) the manner of commission of the crimes indicated planning, sophistication, and professionalism; 4) defendant possessed a large amount of contraband; and 5) defendant took advantage of a position of trust or confidence.  (Cal. Rules of Court, rule 4.421(a).)

Senate Bill No. 567, which became effective January 1, 2022, amended section 1170 by making the middle sentencing term the presumptive sentence unless certain circumstances exist.  (Adding § 1170, subd. (b)(1), (2), (3).)  Pursuant to the amendment, the trial court may impose an upper term sentence only where there are circumstances in aggravation and the facts underlying those circumstances have been stipulated by the defendant or found true beyond a reasonable doubt by the fact-finder.  The court may also rely upon certified records of the defendant's prior convictions.

In *Lynch,* our Supreme Court held that where a trial court relied upon facts not proved in compliance with section 1170, subdivision (b) to impose the upper term, the sentence must be vacated and the matter remanded unless we conclude beyond a reasonable doubt that the jury would necessarily have found the facts underlying all circumstances in aggravation relied upon by the court true beyond a reasonable doubt.  (*Lynch, supra,* 16 Cal.5th at pp. 742-743, 761.)  In making this determination, we examine what the jury necessarily did find and ask whether it would be impossible on the evidence for the jury to find that without also finding the missing fact as well.  (*Id.* at p. 775.)  Further, because Senate Bill 567 altered the scope of the trial court's discretion regarding sentences imposed pursuant to former 1170, subdivision (b), the record must "clearly indicate" that the court would have found an

upper term justified had it been aware of its more limited discretion. (*Lynch,* at p. 743.)

Any fact-finding error here is harmless beyond a reasonable doubt because the jury would have found *every* aggravating sentencing factor true beyond a reasonable doubt. Brasuell, a 250-pound man, pinned C.D. to the bed while forcibly performing oral sex on her. He informed T.D. that he had a gun, an implied threat of bodily harm; he showed the gun to K.B. Police investigators found a loaded .357 revolver in Brasuell's gun safe.

The minor victims were particularly vulnerable because they led troubled lives and, in the case of C.D., suffered from psychosis (schizophrenia), drug-induced psychosis, and suicide ideation. L.D. was a runaway who often lived at Brasuell's residence and became addicted to methamphetamine. Brasuell supplied the victims with alcohol and controlled substances. T.D. was vulnerable due to a traumatic brain injury she suffered as a child and the drugs made her incoherent. She became addicted to Adderall and Valium, which Brasuell supplied her. Brasuell also engaged in sexual activity with the minors while they were unconscious.

Brasuell's crimes involved planning and sophistication. They were not crimes of opportunity or convenience. Brasuell furnished drugs to his minor victims, resulting in their unconsciousness and drug addiction. He then demanded sexual activity in return for drugs.

Also the jury convicted Brasuell of separate crimes against four minors. In addition, the court relied upon the great quantity of contraband (200 prescription pill bottles [many containing drugs], controlled substances, methamphetamine pipes) recovered at the Brasuell home. In addition, the court chose to impose consecutive, not concurrent sentences throughout sentencing, indicating the reluctance to impose lesser terms.

Moreover, the trial court "clearly indicate[d]" that it would not have imposed a lesser sentence. (*Lynch, supra,* 16 Cal.5th at p. 743.) At sentencing, the trial judge stated: "The lengthy prison sentence that you are going to receive today . . . one of the good things [is] that it does . . . protect us from people like you. . . ." Remand for resentencing would be an idle act.

*VII.*

Brasuell asserts that Assembly Bill No. 518 requires that his case be remanded for resentencing to permit the court to exercise its discretion to stay his conviction on count 2 rather than count 3, and count 10 rather than count 11, pursuant to section 654. The Attorney General concedes that the recent amendments to section 654 apply to Brasuell, but that remand is not required because the trial court clearly indicated its intent to impose an aggravated sentence. We agree.

Assembly Bill No. 518 amends section 654 by removing the requirement that a defendant shall be punished under the provision providing for the longest term of imprisonment. (Stats. 2021, ch. 441, § 1.) It grants discretion to the trial court to impose punishment under any of the applicable provisions. (*People v. Mendoza* (2022) 74 Cal.App.5th 843, 862 [pursuant to Assembly Bill No. 518, trial court has discretion to select which offense is punishable].) Brasuell is entitled to the benefit of Assembly Bill No. 518, permitting the court to exercise its sentencing discretion pursuant to section 654. (*In re Estrada, supra,* 63 Cal.2d 740, 745; *People v. Sek* (2022) 74 Cal.App.5th 657, 666-667.)

A trial court must exercise its informed discretion when sentencing a defendant. (*People v. Salazar* (2023) 15 Cal.5th 416, 425; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) When a sentencing court was not fully aware of the scope of its discretionary powers, the appropriate remedy is to remand for

17

resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion if it had been aware of its discretion.  (*Salazar*, at p. 425.)

Here there was no possibility that the trial court would have exercised discretion to stay Brasuell's sentence on counts 2 and 10 in favor of imposing a lesser sentence on counts 3 and 11.  The court found no factors in mitigation and at least six factors in aggravation.  In sentencing, the trial judge stated:  "The lengthy prison sentence that you are going to receive today . . . one of the good things [is] that it does . . . protect us from people like you. . . . You attempted to abuse anyone who would testify against you.  Continuous violation of court orders.  Continuous violations of the law.  You submitted documents to this court that were false.  You made accusations against people that were false.  You have never voluntarily acknowledged wrongdoing. . . .  Again, throughout this process you made repeated misrepresentations to the Court and perjured yourself in certain documents."  This record clearly indicates that the court would have selected the same counts to stay pursuant to section 654 if it had been aware it had the discretion to choose otherwise.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.          CODY, J.

18

Matthew G. Guerrero, Judge

Superior Court County of San Luis Obispo

_____

Mark R. Feeser, under appointment by the Court of Appeal, and Richard Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne, Idan Ivri and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.